IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHIRI WILLCOT,

        Plaintiff,

    v.

REGIONAL ACCEPTANCE CORPORATION
(RAC) and IA AMERICAN WARRANTY
CORP. d/b/a IA AMERICAN WARRANTY
GROUP (IAWC),

        Defendants.

Case No. 3:25-cv-02111-AB

OPINION & ORDER

Shiri Willcot
    Self-represented

Thomas N. Abbott
Troutman Pepper Locke LLP
100 SW Main Street Suite 1000
Portland, OR 97204
    Attorney for Defendant RAC

1 – OPINION & ORDER

Diane Catherine Babbitt
Husch Blackwell LLP
1900 N. Pearl Street Suite 1800
Dallas, TX 75201

Patrick K. Shockey
Husch Blackwell LLP
736 Georgia Avenue Suite 300
Chattanooga, TN 37402
          Attorneys for Defendant IAWC

**BAGGIO, District Judge:**

Plaintiff Shiri Willcot brings this suit against Defendants Regional Acceptance Corporation ("RAC") and iA American Warranty Corp. ("IAWC"). Compl., ECF No. 2. Plaintiff alleges (1) solely against Defendant RAC, violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b); (2) violation of Oregon's guaranteed asset protection ("GAP") statute, Oregon Revised Statute § ("ORS") 646A.779; (3)–(4) unlawful trade practices under ORS 646.608; (5) breach of contract; (6) unjust enrichment; and (7) breach of the covenant of good faith and fair dealing. Compl. 12–22.[1] Defendant IAWC moves to dismiss all six claims levied against it—claims (2) through (7)—for failure to state a claim. IAWC's Mot. Dismiss ("IAWC Mot."), ECF No. 22. Defendant RAC answers, ECF No. 23, and moves for judgment on the pleadings, RAC's Mot. J. ("RAC Mot."), ECF No. 29. For the reasons below, the Court grants in full Defendant IAWC's Motion and grants in part and denies in part Defendant RAC's Motion.

## BACKGROUND

On January 4, 2024, Plaintiff purchased a vehicle from a dealership for approximately $9,584. Compl. 4. Plaintiff financed her vehicle purchase with a loan (installment contract) from Defendant RAC. *Id.* Plaintiff also "purchased a Guaranteed Asset Protection Addendum . . . and

---

[1] Because the numbering of paragraphs in the Complaint restarts at certain sections, the Court uses page numbers in citations to the Complaint unless otherwise indicated.

a 24,000-mile Vehicle Service Contract, both administered by Defendant IAWC." *Id.* The GAP

Addendum provided that "[i]n the event of a Constructive Total Loss, [the creditor] agree[s] to

waive [their] rights against [the borrower] for the Waiver Benefit amount . . . ." Compl. Ex. 2

("GAP Addendum"), at 2.[2] The Addendum defined the Waiver Benefit as, in relevant part, "the

difference between the Unpaid Net Balance and the Actual Cash Value of the Vehicle on the

Date of Loss." *Id.* at 6. The Vehicle Service Contract ("VSC") provided coverage for either 24

months or 24,000 miles. Compl. Ex. 4; Compl. Ex. 11.

On February 16, 2025, Plaintiff "was involved in a rear-end collision that rendered the

[vehicle] undrivable and effectively a total loss. Plaintiff promptly reported the loss to the

insurer." Compl. 4. The insurer "initially denied the claim[,]" then "reversed its decision" but

"did not complete a collision investigation or issue payment for the vehicle." *Id.* Rather, the

"auto-insurance dispute was settled on terms unrelated to the vehicle's valuation or the GAP

claim." *Id.* at 5.

On March 29, 2025, "Plaintiff notified [Defendant] RAC of the total loss, and filed a

GAP claim with [Defendant] IAWC under the Addendum." *Id.* at 4. "Pursuant to the [GAP]

Addendum, Plaintiff was required to cancel any remaining service contracts. On April 2, 2025,

the dealership confirmed that it had submitted the VSC cancellation and quoted an anticipated

refund of $70.25. Plaintiff forwarded this confirmation to [Defendant] IAWC . . . ." *Id.* at 5.

---

[2] The Court properly considers Exhibits incorporated by reference in Plaintiff's
Complaint. "When ruling on a Rule 12(b)(6) motion to dismiss, . . . [a] court may . . . consider
certain materials—documents attached to the complaint, documents incorporated by reference in
the complaint, or matters of judicial notice—without converting the motion to dismiss into a
motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003);
*see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a
part of the pleading for all purposes."). Neither Defendant objects to consideration of the
Complaint's Exhibits, and both Defendants cite the Exhibits. *See* IAWC Mot. 2 n.1
(acknowledging exhibits); *id.* at 5–6 (articulating standards), RAC Mot. 3–6 (citing exhibits); *id.*
at 7–8 (articulating standards).

On May 19, 2025, Defendant "IAWC issued a $1,621.25 GAP payment to [Defendant] RAC . . . ." *Id.* To arrive at this amount, Defendant IAWC made the following calculations: Plaintiff owed $10,691.50 on the car loan; Defendant IAWC deducted the value of the vehicle, which Defendant IAWC valued at $9,000 using a "[National Automobile Dealers Association] 'Clean Retail' valuation[;]" and Defendant IAWC "deducted the $70.25 VSC refund . . . ." Compl. 5; Compl. Ex. 5. Defendant RAC applied the $1,621.25 GAP payment to the loan on May 22, 2025. Compl. 5. Plaintiff did not immediately receive notice of the GAP payment because "[t]his letter was later discovered to have been sent to an incorrect address" but Plaintiff learned of Defendant IAWC's $1,621.15 GAP payment on June 2, 2025. *Id.* at 6.

Plaintiff disputed Defendant IAWC's $9,000 valuation and contacted Defendant RAC to offer "a $4,000 settlement based on fair-market data to resolve the remaining balance." *Id.* Defendant RAC sent an adjuster to inspect the vehicle on June 23, 2025, but Defendant RAC declined to provide Plaintiff a copy of the appraisal. *Id.* at 6–7. In a July 2025 call with Defendant RAC's customer service line, "a representative inadvertently disclosed that RAC's apprais[al] . . . was approximately $3,650." *Id.* at 7. "To date, RAC has refused to provide the appraisal in writing . . . ." *Id.*

On June 30, 2025, Defendant RAC reported Plaintiff's "account as 30 days delinquent." *Id.* Plaintiff's credit report on July 3, 2025, shows the credit line with Defendant RAC as "past due as of Jun[e] 2025" and the last payment date as May 22, 2025. Compl. Ex. 8, at 1. Following Defendant RAC's reporting to credit agencies, "Plaintiff's credit score . . . dropped by approximately 22 points." Compl. 7; Compl. Ex. 8, at 1–2. On October 19, 2025, "Plaintiff filed formal credit disputes with the national consumer reporting agencies regarding [Defendant] RAC's inaccurate June 30 delinquency report. By October 28, 2025, all three agencies had

4 – OPINION & ORDER

closed their investigations, each stating that [Defendant] RAC verified the tradeline as accurate . . . ." Compl. 10.

## STANDARDS

### I.    Rule 12(c)

"Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation modified); *see also Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog.").

### II.    Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

5 – OPINION & ORDER

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

Courts must liberally construe pro se pleadings. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Additionally, a court cannot dismiss a pro se complaint without first explaining to the plaintiff the deficiencies of the complaint and providing an opportunity to amend. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). Dismissal of a pro se complaint without leave to amend is proper only if it is clear that the deficiencies of the complaint could not be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

## DISCUSSION

Defendant IAWC moves to dismiss claims (2)–(7) for failure to state a claim. *See generally* IAWC Mot. Defendant RAC moves for judgment on the pleadings with respect to all claims. *See generally* RAC Mot. The Court addresses each claim in turn.

## I.      15 U.S.C. § 1681s-2(b)

Plaintiff alleges against Defendant RAC a violation of the Fair Credit Reporting Act ("FCRA"), specifically 15 U.S.C. § 1681s-2(b). Compl. 12–13. Plaintiff alleges Defendant RAC inaccurately reported Plaintiff as "delinquent" on her loan around June 30, 2025, and that "upon receiving dispute notifications from all three consumer reporting agencies, [Defendant] RAC failed to conduct a reasonable investigation, failed to review all relevant information, and failed

to delete or modify the inaccurate tradeline." *Id.* at 12. Defendant RAC moves for judgment on the pleadings. RAC Mot. 8–10. Defendant RAC argues their "reporting reflected [the] delinquency accurately . . . [a]nd because the reporting proved accurate, [Defendant] RAC's subsequent verification of the tradeline did not constitute a failure to conduct a reasonable investigation." *Id.* at 9.

"[T]o ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to [credit reporting agencies], called 'furnishers' in the statute." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009). "The FCRA expressly creates a private right of action . . . . [for] claims arising under subsection (b), the duties triggered upon notice of a dispute from a [credit reporting agency]." *Id.* at 1154. To state a claim under § 1681s-2(b), "a plaintiff must show that: (1) he found an inaccuracy in his credit report; (2) he notified a credit reporting agency; (3) the credit reporting agency notified the furnisher of the information about the dispute; and (4) the furnisher failed to investigate the inaccuracies or otherwise failed to comply with the requirements of 15 U.S.C. § 1681s-2(b)(1)(A)–(E)." *Biggs v. Experian Info. Sols., Inc.*, 209 F. Supp. 3d 1142, 1144 (N.D. Cal. 2016) (citation omitted). But before a court reaches the notification or investigation issues, "to prevail on a FCRA claim against a furnisher, a consumer must make a prima facie showing that the furnisher's report was inaccurate." *Gross v. CitiMortgage, Inc*, 33 F.4th 1246, 1251 (9th Cir. 2022). The Ninth Circuit has defined "inaccuracy" for FCRA purposes as either "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Gorman*, 584 F.3d at 1163 (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)).

7 – OPINION & ORDER

Here, Defendant RAC does not raise arguments regarding the notification or investigation but rather argues Plaintiff fails to make a prima facie showing that Defendant RAC's reporting was inaccurate. *See* RAC Mot. 8–10. Plaintiff argues that Defendant RAC's reporting was inaccurate because "the May 2025 payment [was] satisfied through the GAP benefit, and the June payment [was not] 30 days delinquent . . . ." Compl. 12. Defendant RAC acknowledges that it "applied [the GAP benefit] to the loan balance on May 22, 2025[,]" RAC Mot. 4, but that under the terms of the GAP Addendum, "a GAP waiver benefit does not constitute a monthly installment payment[,]" *id.* at 8.

At bottom, this is a contract interpretation dispute nested within an FCRA claim. The GAP Addendum provides that "[i]t is [the borrower's] responsibility to continue making payments and to keep [the] Finance Agreement account current until any Waiver Benefit is determined and provided." GAP Addendum 2. Defendant RAC argues this is proof positive that "[n]othing in the Addendum provides that the waiver benefit satisfies individual monthly payments as they come due." RAC Mot. 8–9. But the same is true of the inverse—nothing in the Addendum provides that the waiver benefit is not applied to monthly payments. The Addendum language at least contemplates that Plaintiff's responsibility continued *until* provision of the benefit, but that provision of the benefit could modify those responsibilities, including but not limited to the prospect of the benefit applying to monthly payments. This prospect is further supported by Plaintiff's credit reports. Compl. Ex. 8. The credit reports display a "Last Payment Date" of May 22, 2025, the same day that Defendant RAC reported applying the GAP payment to the loan balance. *Id.* at 1–2; RAC Mot. 4. The parties agree that Plaintiff did not personally make a May 2025 payment. *See* RAC Mot. 9; Pl.'s Opp'n RAC Mot. J. ("Pl.'s Opp'n RAC") 7, ECF No. 30. The Court is left with Plaintiff's allegation that the May 22, 2025 payment reflected

8 – OPINION & ORDER

in the credit reports constituted Defendant RAC applying the GAP benefit to Plaintiff's May loan payment, which is "plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

More to the point: Defendant RAC is asking the Court, in a motion for judgment on the pleadings, to resolve contractual ambiguity. The Court declines to do so. The Court finds instructive *Lovejoy v. Bank of America*, No. C 13–1638 DMR, 2013 WL 3360898 (N.D. Cal. July 3, 2013). In *Lovejoy*, the plaintiffs' § 1681s-2(b) claim arose from a deed in lieu of foreclosure document. *Id.* at *1–2. Upon the defendant's motion to dismiss, the court held:

> The accuracy of [the defendant's] reporting on the loans will turn on the resolution of the question of whether [the plaintiffs] were relieved of their obligation to make the . . . loan payments. This disputed issue ultimately must be decided, but should not be determined at the pleading stage [because] . . . nothing in the [foreclosure document] clearly contradicts [the plaintiffs'] allegations . . . .

*Id.* at *4. Like the *Lovejoy* court, this Court finds nothing in the GAP Addendum clearly contradicts Plaintiff's allegations and declines to resolve contractual ambiguity at this stage. Thus, the Court denies Defendant RAC's motion for judgment on the pleadings with respect to Plaintiff's Fair Credit Reporting Act claim.[3]

## II.     ORS 646A.779

Defendant IAWC moves to dismiss Plaintiff's ORS 646A.779 claim, IAWC Mot. 6–8, and Defendant RAC moves for judgment on the pleadings, RAC Mot. 10–13. The Court first addresses the merits and dismisses Plaintiff's claim with leave to amend. The Court then addresses Defendant RAC's additional argument that it is an improper defendant and finds that if Plaintiff, upon amendment, states a claim, Defendant RAC is a proper defendant.

---

[3] At this juncture, the factual dispute of whether Defendant RAC reported the May or June payment as the delinquent payment is inconsequential. *Compare* RAC Mot. 9 (suggesting Defendant RAC reported May as delinquent), *with* Pl.'s Opp'n RAC 5 (arguing Defendant RAC "reported Plaintiff as 30 days delinquent on June 30, 2025 for the June payment - not the May payment"). What matters is that Plaintiff has stated a prima facie claim that Defendant RAC's reporting in late June 2025 was inaccurate.

A.    Merits

Plaintiff alleges Defendant IAWC violated the Oregon GAP statute, ORS 646A.779.[4] Plaintiff alleges that to determine the actual cash value (ACV), Defendant IAWC "used an inflated $9,000 'NADA Clean Retail' valuation without conducting a physical inspection or adjuster assessment." Compl. 14. Plaintiff further alleges that Defendant "RAC's own field appraisal placed ACV at approximately $3,650 . . . ." *Id.* Defendant IAWC moves to dismiss, arguing that Defendant IAWC's conduct was consistent with both Oregon statute and the contract language in the GAP Addendum. IAWC Mot. 6–8. Defendant RAC moves for judgment on the pleadings on similar grounds. RAC Mot. 11–12. The Court finds the valuation method followed unambiguous statutory and contractual provisions and dismisses Plaintiff's claim with leave to amend.

ORS 646A.779 outlines the proper method to determine the amount of a GAP waiver, also called a GAP benefit. The statute provides, in relevant part:

(b) If primary motor vehicle insurance or third party liability insurance does not cover a total loss of the motor vehicle . . . the creditor shall waive the difference between:
(A) The value of the motor vehicle immediately before the loss or theft of the motor vehicle, as shown in a published and generally available regional or national guide to motor vehicle values or from the best available equivalent information, as specified in the guaranteed asset protection waiver; and
(B) The amount the borrower owes under the finance agreement.

---

[4] ORS 646.608(1)(zzz) provides that "[a] person engages in an unlawful practice if in the course of the person's business . . . the person . . . [v]iolates a provision of ORS 646A.770 to 646A.787." Because ORS 646A.779 falls within that range, violation of this statute is an unlawful trade practice. However, because Plaintiff has pleaded this claim separately from her other ORS 646.608(1) allegations in Claims Three and Four, the Court likewise addresses this claim separately.

10 – OPINION & ORDER

ORS 646A.779(1). The GAP Addendum has multiple, consistent provisions bearing on this topic:

> If there is no Primary Insurance Carrier coverage in effect on the Date of Loss . . . or no proceeds are received from the Primary Insurance Carrier policy, the Addendum will only cover the difference between the Unpaid Net Balance and the Actual Cash Value of the Vehicle on the Date of Loss.

GAP Addendum 1.

> If there is no Primary Insurance Carrier at the Date of Loss, Constructive Total Loss will be calculated as if primary insurance was intact using NADA market value (the NADA 'Clean Retail Value') of the Vehicle.

GAP Addendum 2.

> Actual Cash Value (ACV): . . . If there is no Primary Insurance Carrier coverage at the Date of Loss . . . the ACV will be the value as listed in a national or regional guide (such as the NADA guide), or at the GAP Administrator's discretion, the GAP Administrator may use an equivalent national or regional guide for the location in which the Vehicle is principally used.

GAP Addendum 4.

> Waiver Benefit[:] . . . In the event that there is no Primary Insurance Carrier coverage in effect on the Date of Loss . . . or if no proceeds are received from the Primary Insurance Carrier policy, the Addendum will only cover the difference between the Unpaid Net Balance and the Actual Cash Value of the Vehicle on the Date of Loss.

GAP Addendum 6.

Here, Plaintiff states "the underlying auto-insurance dispute was settled on terms unrelated to the vehicle's valuation or the GAP claim." Compl. 5. Thus, Defendant IAWC was permitted, in clear statutory and contractual terms, to utilize the NADA value. The Court disagrees with Plaintiff that "the statutory language presents competing reasonable interpretations regarding valuation methodology . . . ." Pl.'s Opp'n IAWC Mot. Dismiss ("Pl.'s Opp'n IAWC") 3, ECF No. 27. In the absence of an insurance determination, the statute instructs usage of a "published . . . national guide . . . as specified in the guaranteed asset protection

11 – OPINION & ORDER

waiver . . . ." ORS 646A.779(b)(A). In turn, the GAP Addendum specified the NADA guide. GAP Addendum 4.

Plaintiff also alleges that Defendant RAC's "field appraisal placed ACV at approximately $3,650 . . . ." Compl. 14. This allegation does not alter the Court's analysis. The ACV is predicated on the "value of the motor vehicle *immediately before the loss*." ORS 646A.779(b)(A) (emphasis added); *see also* GAP Addendum 1 (denoting "Actual Cash Value of the Vehicle on the Date of Loss"). Defendant RAC's appraisal occurred on June 23, 2025, more than four months after the date of loss. Compl. 6. Indeed, it appears that this appraisal was conducted with an eye towards the post-loss repossession/auction value, not to pre-loss value. *See* Compl. 8 (averring Defendant RAC's representative stated the appraisal "confirmed that the vehicle was deemed a total loss and that 'it was not worth the repossession fees and auction sale'"). But even if the June appraisal somehow bore on pre-loss value, it does not modify the Court's conclusion that Plaintiff has not stated a claim because Defendants followed the clear statutorily- and contractually-dictated valuation method. Plaintiff's ORS 646A.779 claim is dismissed with leave to amend.

B.      Defendant RAC as a Defendant

In addition to the above grounds, Defendant RAC argues that Plaintiff's ORS 646A.779 claim fails specifically against Defendant RAC "because RAC played no role in calculating the waiver benefit" and "Plaintiff's characterization of [Defendant] IAWC as [Defendant] RAC's 'agent' does not alter this analysis." RAC Mot. 10–11. Plaintiff counters that "ORS 646A.779 imposes statutory obligations on the creditor—which is [Defendant] RAC—not merely on the administrator." Pl.'s Opp'n RAC 8. The Court reaches this issue because, if the Court were to find Defendant RAC an improper defendant, then the Court may consider dismissal *with*

prejudice with respect to Defendant RAC. The Court concludes that if Plaintiff, upon amendment, states a claim under ORS 646A.779, Defendant RAC is a "creditor" as contemplated by Oregon statute and thus a proper defendant.

The Oregon statutory scheme governing GAP waivers, ORS 646A.770 through ORS 646A.790, inclusive, identifies the creditor as the protagonist of GAP waivers. *See, e.g.*, ORS 646A.770(5) (defining a GAP waiver as "a contractual provision of or an addendum to a finance agreement that is secured by a motor vehicle under the terms of which a *creditor* agrees to waive the *creditor's* right to collect all or part of an amount due from a borrower" in the case of total loss or theft) (emphasis added); ORS 646A.779 (providing, at multiple points, "the creditor shall waive"). ORS 646A.770 defines "creditor" as follows:

> (a) A person that:
>    (A)   Permits another person to defer or to pay in installments an amount due under a finance agreement that is secured by a motor vehicle; or
>    (B)   Otherwise extends credit to another person under a finance agreement that is entered into in connection with purchasing or leasing a motor vehicle; or
> (b) An assignee of a person described in paragraph (a) of this subsection.

ORS 646A.770(2).

Here, Defendant RAC is the creditor—the dealership assigned its interest in the Retail Installment Contract to Defendant RAC. Compl. Ex. 1, at 5. In turn, the GAP Addendum "amends and becomes part of the Finance Agreement." GAP Addendum 1. The first line of the Addendum states, "[t]his Addendum is between the Customer/Borrower (I, You, Your) and the Dealer/Creditor (We, Us, Our), or if assigned, with the assignee Financial Institution/Lender." GAP Addendum 1. The Addendum, on the first page, identifies Defendant RAC as the "Financial Institution/Lender." *Id.* To be sure, the Addendum identifies Defendant IAWC as the GAP Administrator. *Id.* But merely delegating administrative duties to Defendant IAWC does

13 – OPINION & ORDER

not remove Defendant RAC from its role as the creditor. In addition, the Addendum nowhere assigns this creditor role to Defendant IAWC. *Cf.* ORS 646A.770(2)(b) (providing that "creditor" includes "[a]n assignee of a person described in paragraph (a) of this subsection"). Because Oregon GAP statutes, including the statute—ORS 646A.779—upon which Plaintiff grounds her claim, identify the creditor as the entity responsible for the waiver, Defendant RAC is a proper defendant. If Plaintiff chooses to replead this claim in her amended complaint, she may allege ORS 646A.779 violations against Defendant RAC.

## III.    ORS 646.608—Claim 3

Plaintiff, in Claims Three and Four, alleges violations of the Oregon Unlawful Trade Practices Act ("UTPA") under ORS 646.608(1)(e), (g), (k), (t), and (u). Compl. 14–17. To bring a private cause of action under the UTPA, a plaintiff is required to show that "(1) the defendant committed an unlawful trade practice; (2) plaintiff suffered an ascertainable loss of money or property; and (3) plaintiff's injury (ascertainable loss) was the result of the unlawful trade practice." *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 127, 361 P.3d 3 (2015). For clarity, the Court treats Claim Three in three categories: valuation allegations under subsections (e) and (g); delinquent credit reporting under (k); and general deceptive conduct under (u). The Court treats Claim Four separately.[5]

//

//

---

[5] The parties contest whether Federal Rule of Civil Procedure 8 or Rule 9(b) applies to Claims Three and Four. *See* IAWC Mot. 10 (arguing Plaintiff's Claims Three and Four allege misrepresentations and "are thus subject to heightened scrutiny under Rule 9(b)"); RAC Mot. 13 (same); Pl.'s Opp'n RAC 9 (arguing "Plaintiff's UTPA claims are grounded in unfair and deceptive conduct, not common law fraud"). Since the Court finds that the claims fail to meet the pleading standard under Rule 8, it need not decide whether the heightened pleading standard under Rule 9(b) applies. *See, e.g.*, *Automated Pet Care Prod., LLC v. PurLife Brands, Inc.*, 703 F. Supp. 3d 1022, 1032 n.3 (N.D. Cal. 2023).

A.      ORS 646.608(1)(e) and (g)

Plaintiff alleges, under subsection (e), that "Defendants represented, through the

Addendum and related communications, that the Addendum would waive the difference between

the vehicle's ACV and the remaining loan balance in accordance with Oregon law. Defendants

overvalued the vehicle, underpaid the promised benefit, and refused to waive the resulting

deficiency." Compl. 15. Similarly, Plaintiff alleges, under subsection (g), that Defendant "IAWC

misrepresented the standard and quality of its valuation process by applying an inflated NADA

Clean Retail value rather than determining the vehicle's ACV immediately before the loss." *Id.*

The relevant statute provides:

> (1) A person engages in an unlawful practice if in the course of the person's
> business, vocation or occupation the person does any of the following: . . .
>> (e) Represents that real estate, goods or services have sponsorship, approval,
>> characteristics, ingredients, uses, benefits, quantities or qualities that the
>> real estate, goods or services do not have . . . .
>> (g) Represents that real estate, goods or services are of a particular standard,
>> quality, or grade, or that real estate or goods are of a particular style or
>> model, if the real estate, goods or services are of another.

ORS 646.608.

Plaintiff has failed to state how Defendants represented the GAP Addendum to be

anything it was not. As articulated above, the Addendum provides "[i]f there is no Primary

Insurance Carrier coverage at the Date of Loss . . . the ACV will be the value as listed in a

national or regional guide (such as the NADA guide) . . . ." GAP Addendum 4; *see also* ORS

646A.779(b)(A) (providing for, when "liability insurance does not cover a total loss of the motor

vehicle[,]" valuation "as shown in a published and generally available regional or national guide

to motor vehicle values"). Taking Plaintiff's allegations as true, the representations made by

Defendants in the Addendum contemplate the method used by Defendants to value the vehicle.

Plaintiff thus fails to state a claim alleging misrepresentation of the qualities of the Addendum.

15 – OPINION & ORDER

The Court dismisses Plaintiff's ORS 646.608(1)(e) and (g) claims related to the valuation with leave to amend.

      B.      ORS 646.608(1)(k)

Plaintiff alleges under ORS 646.608(1)(k) that Defendant RAC "misrepresented Plaintiff's payment status by reporting the account as 30 days delinquent even though the May payment had been satisfied and the June payment was not 30 days delinquent under industry reporting standards." Compl. 15. The relevant statute provides that a "person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person . . . [m]akes false or misleading representations concerning credit availability or the nature of the transaction or obligation incurred." ORS 646.608(1)(k).

The Court, *sua sponte*, finds this claim preempted by the Fair Credit Reporting Act. "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) . . . ." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). "Preemption is a matter of subject matter jurisdiction . . . ." *McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1009 (9th Cir. 2018). Although the Defendants do not raise preemption, "a court may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).[6]

"Preemption of state law, by operation of the Supremacy Clause, can occur in one of several ways: express, field, or conflict preemption." *Aargon Agency, Inc. v. O'Laughlin*, 70

---

[6] The Court notes that it finds preemption taking all facts pleaded by Plaintiff as true. *See Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1038 n.4 (9th Cir. 2008) ("[N]o amount of discovery would change the central holding that Congress intended for the [federal banking statute] to preempt [this] state restriction[] on national banks . . . ."); *see also Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018) (analyzing preemption on motion to dismiss because the issue is "purely legal and do[es] not depend on resolution of any factual disputes").

16 – OPINION & ORDER

F.4th 1224, 1234 (9th Cir. 2023) (quoting *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016)). "Express preemption occurs 'when the text of a federal statute explicitly manifests Congress's intent to displace state law.'" *Id.* (quoting *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1114 (9th Cir. 2022)). "Federal law may also impliedly preempt state law through either field or conflict preemption." *Id.*

The Fair Credit Reporting Act provides in relevant part that:

> (b) No requirement or prohibition may be imposed under the laws of any State--
>     (1) with respect to any subject matter regulated under-- . . .
>         (F) section 1681s-2 of this title, relating to the responsibilities of persons
>             who furnish information to consumer reporting agencies . . . .

15 U.S.C. § 1681t. Courts in this district have found § 1681t(b)(1)(F) preempts claims brought under Oregon's Unlawful Trade Practice Act, ORS 646.608. *See, e.g.*, *Weseman v. Wells Fargo Home Mortg. Inc.*, No. CV 06–1338–ST, 2008 WL 542961, at *3 ("It is clear that [§ 1681t(b)(1)(F)] preempts [the plaintiff's claim] alleging a violation of the [Oregon Trade Practices Act]."); *Anderson v. Bank of Am., N.A.*, No. 3:13–cv–1660–AC, 2014 WL 12776822, at *11 (D. Or. July 29, 2014) ("Any statutory state law claim factually based on [the bank's] reporting credit information to the [credit reporting agencies] is preempted by the Fair Credit Reporting Act."), *report and recommendation adopted*, 2014 WL 4631222 (D. Or. Sept. 12, 2014).

Also instructive for comparison is the Ninth Circuit's recent decision in *Aargon*. 70 F.4th at 1224. There, the panel found a Nevada law regulating the timeline of reporting medical debt was not preempted by the FCRA, and specifically not preempted by § 1681t(b)(1)(F), because the state law "does not affect furnishers' obligations to provide accurate information to [credit reporting agencies] as regulated by § 1681s-2(a), nor does it affect their obligations upon notice of consumer disputes as regulated by § 1681s-2(b)." *Id.* at 1235–36. In contrast to the Nevada

17 – OPINION & ORDER

law in *Aargon*, ORS 646.608(1)(k) does "affect furnishers' obligations to provide accurate information to [credit reporting agencies] . . . ." *Id.* Or perhaps more accurately, ORS 646.608(1)(k) does not *affect* furnishers' obligations so much as it overlays a nearly identical obligation. *Compare* ORS 646.608(1)(k) ("A person engages in an unlawful practice if . . . [they make] false or misleading representations concerning credit availability or the nature of the transaction or obligation incurred"), *with* § 1681s-2(a)(1)(A) ("A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.").

In sum, the Court finds Plaintiff's ORS 646.608(1)(k) claim preempted by the FCRA. Because amendment could not change the preemption analysis, the Court dismisses Plaintiff's claim under ORS 646.608(1)(k) without leave to amend. *See Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390, 399 (9th Cir. 2002) (remanding "with instructions to dismiss [the plaintiff's] suit with prejudice on the ground that [federal law] preempts it").

C.    ORS 646.608(1)(u)

In her claim under ORS 646.608(1)(u), Plaintiff alleges that "Defendants disregarded documentation and Plaintiff's correspondence, refused to correct known valuation errors, withheld claim information, and continued to enforce a deficiency that should have been waived." Compl. 15. Oregon law provides that a "person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person . . . [e]ngages in any other unfair or deceptive conduct in trade or commerce." ORS 646.608(1)(u). However, "[a]n action or suit may not be brought under subsection (1)(u) of this section unless the Attorney General has first established a rule in accordance with the provisions of ORS chapter 183 declaring the conduct to be unfair or deceptive in trade or commerce." ORS 646.608(4). Plaintiff does not

18 – OPINION & ORDER

identify a rule established by the Attorney General under which her action is brought. Therefore, the Court dismisses Plaintiff's ORS 646.608(1)(u) claim with leave to amend.

## IV.    ORS 646.608—Claim 4

Plaintiff alleges violations of ORS 646.608(1)(e), (g), (t), and (u) with respect to the VSC refund process. Plaintiff levies a series of allegations related to the VSC refund—that Defendants inflated mileage, that Defendants fabricated dates/falsely backdated, and that Defendants' conduct was not authorized by statute or regulation. Compl. 8–9, 16–17. Defendants argue, among other things, that Plaintiff "has not alleged that she suffered an ascertainable loss of money or property as a result of such conduct." IAWC Mot. 12–13; RAC Mot. 15.

"[A] plaintiff in a private [UTPA] action must prove injury in the form of an 'ascertainable loss of money or property.'" *Pearson*, 358 Or. at 116 (quoting ORS 646.638(1)). "[T]he loss required for a UTPA claim must be specifically of 'money or property, real or personal.'" *Id.* at 117 (quoting ORS 646.638(1)). The statutory scheme "effectively requires that the unlawful trade practice *cause* the ascertainable loss on which a UTPA plaintiff relies." *Id.* at 126.

Here, without reaching the particular pleaded subsections of the UTPA, the Court finds Plaintiff fails to state a claim because she has not identified an ascertainable loss of money or property. Plaintiff avers that on April 2, 2025, the dealership confirmed submission of the VSC cancellation and "quoted an anticipated refund of $70.25." Compl. 5. The GAP benefit issued in May reflected this $70.25 refund. *Id.* Plaintiff addresses the ascertainable loss issue as follows:

> [Defendant] RAC argues there was no ascertainable loss because the total refund was ultimately $70.25 regardless of processing. This is factually incorrect. The initial refund processed with inflated mileage was only $39.30 - not $70.25. The dealership had to intervene and separately process the remaining $30.95, which [Defendant] RAC did not post to Plaintiff's account until October 27, 2025. Had the dealership not intervened, Plaintiff would not have received the full $70.25.

19 – OPINION & ORDER

> The mileage inflation directly caused a reduced initial refund and constitutes an ascertainable loss. Additionally, IAWC deducted $70.25 from Plaintiff's GAP benefit before any cancellation had been processed - a deduction made without contractual authorization under the "received and applied" language of the Addendum's Unpaid Net Balance definition. That premature deduction is itself an ascertainable loss independent of the ultimate refund amount.

Pl.'s Opp'n RAC 10–11. Taking that as true, is not clear how Plaintiff "suffer[ed] an ascertainable loss of money or property . . . ." ORS 646.638(1). Plaintiff does not contest the refund amount of $70.25, nor does Plaintiff contest that exactly $70.25 was deducted from the GAP payment. Nor does Plaintiff allege harm from delay—the "premature" refund was in the correct amount. Even assuming that Defendants committed administrative mistakes in the issuance of the refunds, Plaintiff fails to allege an ascertainable loss.[7] The Court dismisses Plaintiff's UTPA claims with respect to the VSC refund. The Court grants Plaintiff leave to amend; the Court advises Plaintiff that, if she chooses to replead this claim, she must explain how the alleged errors resulted in an ascertainable loss—that is, a "loss of money or property." ORS 646.638(1).

## V.     Breach of Contract

Plaintiff alleges Defendants breached the terms of the Addendum. Compl. 17–18. First, Plaintiff reiterates her allegations regarding valuation, alleging Defendant "IAWC failed to apply the contractual ACV standard, using an inflated $9,000 NADA Clean Retail Value rather than the vehicle's actual retail value on the Date of Loss" and that Defendant "RAC adopted and enforced this inflated valuation . . . ." *Id.* at 18. Second, Plaintiff reiterates her allegations

---

[7] The Court recognizes the mileage readings and cancellation dates on the two VSC statements are different. *Compare* Compl. Ex. 4 (VSC "Cancellation Quote" prepared April 2, 2025, listing "Cancellation Date" as 04/02/2025 and "Cancellation Mileage" as 119,684), *with* Compl. Ex 11 (VSC "Cancellation Summary" prepared July 10, 2025, listing "Cancellation Date" as 05/08/2025 and "Cancellation Milage" as 120,075). However, Plaintiff has failed to articulate how this mileage or date discrepancy resulted in an "ascertainable loss of money or property." ORS 646.638(1).

20 – OPINION & ORDER

regarding the vehicle service contract refund, alleging "[n]o VSC refund had been received or applied as of May 19, 2025, yet [Defendant] IAWC deducted $70.25 from the waiver calculation. [Defendant] RAC accepted and applied the underfunded payment . . . ." *Id.* Defendants IAWC and RAC move for dismissal and judgment on the pleadings, respectively, arguing that Plaintiff cannot state a claim because the Addendum expressly permits the NADA valuation method. IAWC Mot. 8–9; RAC Mot. 16.

"[T]o state a claim for breach of contract, a plaintiff must, at a minimum, plead facts with sufficient particularity as to allege the existence of a contract, its relevant terms, and a breach by defendant that resulted in damage to plaintiff." *Huskey v. Or. Dep't of Corr.*, 373 Or. 270, 275, 564 P.3d 142 (2025). "Alleging damages is an essential pleading requirement of a breach of contract claim . . . ." *Id.* at 275–76.

Here, on Plaintiff's valuation allegations, Plaintiff fails to state a claim for breach of contract for the same reasons as above. *See* Discussion, *supra*, II.A. The Addendum provides "[i]f there is no Primary Insurance Carrier coverage at the Date of Loss . . . the ACV will be the value as listed in a national or regional guide (such as the NADA guide) . . . ." GAP Addendum 4. The parties do not dispute that "the underlying auto-insurance dispute was settled on terms unrelated to the vehicle's valuation or the GAP claim." Compl. 5. Thus, Defendant IAWC was permitted, in clear contractual terms, to utilize the value listed in NADA to determine ACV.

Next, on Plaintiff's VSC allegations, Plaintiff fails to state a claim with respect to damages, as articulated above. See Discussion, *supra*, IV. The Addendum provides "[t]he Unpaid Net Balance will be reduced by . . . amounts received and applied against the Finance Agreement balance after the Date of Loss such as . . . refunds on service contracts or prepaid maintenance contracts." GAP Addendum 5. Plaintiff does not dispute the $70.25 refund was the

21 – OPINION & ORDER

correct amount but instead alleges that Defendant IAWC prematurely deducted $70.25 and Defendant RAC accepted this amount "without verifying receipt . . . ." Compl. 18. Taking those allegations as true, Plaintiff fails to explain how this premature deduction or acceptance caused her damages. The Court dismisses the breach of contract claim with leave to amend.

Like the ORS 646A.779 claim, Defendant RAC argues that Plaintiff's allegations are improperly directed against Defendant RAC because the valuation and VSC refund processing were Defendant IAWC's responsibilities. RAC Mot. 16–17. Unlike in the context of Plaintiff's ORS 646A.779 claim where Defendant RAC's role was statutorily dictated, the propriety of a given defendant in a breach of contract claim depends on the contours of the allegations. Therefore, the Court does not reach this argument because whether Defendant RAC is liable for breach of contract will depend on (if and) how Plaintiff repleads breach of contract.

## VI.    Unjust Enrichment

Plaintiff alleges, in the alternative to her breach of contract claim, that "Defendants received and retained financial benefits to which they were not entitled . . . ." Compl. 18. Plaintiff focuses on the VSC refund—that Defendant "IAWC reduced its GAP payment by deducting a $70.25 VSC refund before any refund had been issued or applied." *Id.* at 19. Defendants move for dismissal and judgment on the pleadings, respectively, on grounds that the existence of an enforceable contract precludes Plaintiff's claim. IAWC Mot. 15–16; RAC Mot. 17–18.

"Unjust enrichment is a theory of 'quasi-contract' based on an implied contract." *W. Radio Servs. Co., Inc. v. Allen*, 147 F. Supp. 3d 1132, 1145 (D. Or. 2015) (citing *Summer Oaks Ltd. P'ship v. McGinley*, 183 Or. App. 645, 654, 55 P.3d 1100 (2002)), *aff'd*, 716 F. App'x 660 (9th Cir. 2018). "The theory of unjust enrichment provides a remedy where no enforceable

22 – OPINION & ORDER

contract exists . . . ." *Id.* Indeed, when unjust enrichment is pleaded in the alternative to a contract claim, "the two theories are mutually exclusive: 'It is well established that there cannot be a valid, legally enforceable contract and an implied contract covering the same conduct.'" *Ken Hood Constr. Co. v. Pac. Coast Constr., Inc.*, 203 Or. App. 768, 772, 126 P.3d 1254 (2006) (quoting *Mount Hood Cmty. Coll. v. Fed. Ins. Co.*, 199 Or. App. 146, 158, 111 P.3d 752 (2005)), *rev. denied*, 341 Or. 366 (2006).

Here, Plaintiff alleges the existence of a valid and enforceable contract. Compl. 17 ("The Addendum is a valid and enforceable contract between Plaintiff and [Defendant] RAC . . . ."); *see also* IAWC Mot. 8 ("There is no dispute that the GAP Addendum is a valid and enforceable contract."). The Addendum provides "[t]he Unpaid Net Balance will be reduced by . . . amounts received and applied against the Finance Agreement balance after the Date of Loss such as . . . refunds on service contracts or prepaid maintenance contracts." GAP Addendum 5. The Court finds this contract language governs the VSC refund and thus "cover[s] the same conduct" as the conduct alleged in Plaintiff's unjust enrichment claim. *See Ken Hood*, 203 Or. App. at 772. Thus, Plaintiff fails to state an unjust enrichment claim. Because the Court finds as a matter of law that the contract covers the conduct at hand, the Court finds amendment would be futile and dismisses Plaintiff's unjust enrichment claim without leave to amend.

## VII.    Implied Covenant of Good Faith and Fair Dealing

In her final claim, Plaintiff alleges a breach of the implied covenant of good faith and fair dealing. Compl. 19–22. "[E]very contract has an obligation of good faith in its performance and enforcement under the common law." *Klamath Off-Project Water Users, Inc. v. Pacificorp*, 237 Or. App. 434, 445, 240 P.3d 94 (2010), *rev. denied*, 349 Or. 602 (2011). "The common-law implied duty of good faith and fair dealing serves to effectuate the objectively reasonable

23 – OPINION & ORDER

expectations of the parties." *Id.* However, "the duty cannot contradict an express contractual term . . . ." *Id.* (citation modified). Put another way, "the duty of good faith and fair dealing . . . may be implied as to a disputed issue only if the parties have not agreed to an express term that governs that issue . . . ." *Gibson v. Douglas Cnty.*, 197 Or. App. 204, 217, 106 P.3d 151 (2005).

For clarity, the Court will categorize Plaintiff's allegations and will cite using the paragraph numbering specific to this claim found on Complaint pages 19–22: valuation, at ¶¶ 3–4, 6, 11; VSC, at ¶ 10; retention of insurance proceeds, at ¶¶ 8, 12; and credit, at ¶¶ 9, 13. Defendant IAWC argues that their conduct was "consistent with the contract's terms . . . [and therefore] cannot serve as the basis for Plaintiff's claim . . . ." IAWC Mot. 14–15. Defendant RAC similarly argues that the claim fails because Defendant RAC acted consistently with the contract. RAC Mot. 18.

A.    Non-Credit Allegations

Plaintiff does not state a claim for violation of the implied covenant of good faith and fair dealing with respect to the car valuation because express terms of the contract govern valuation methods. The GAP Addendum contains express terms on the valuation method to be used in the absence of an insurance payout. *See* GAP Addendum 4 ("If there is no Primary Insurance Carrier coverage at the Date of Loss . . . the ACV will be the value as listed in a national or regional guide (such as the NADA guide) . . . ."); *see also* Discussion, *supra*, II.A. The Court dismisses Plaintiff's claim for violation of the covenant of good faith and fair dealing regarding the valuation because it is covered by an express term in the contract. *See Gibson*, 197 Or. App. at 217.

//

24 – OPINION & ORDER

Nor does Plaintiff state a claim for breach of the implied covenant of good faith and fair dealing with respect to the VSC because, as previously explained, Plaintiff fails to allege any damages stemming from her VSC allegations. *See* Discussion, *supra*, IV; *cf. Foraker v. USAA Cas. Ins. Co.*, No. 3:14-CV-87-SI, 2017 WL 11828494, at *3 (D. Or. Mar. 29, 2017) (noting "[a] breach of the implied covenant of good faith and fair dealing is a breach of contract" and "[c]ontract damages must be foreseeable and not speculative") (citation modified).

Plaintiff's allegations about Defendant RAC's accusations she retained insurance proceeds also do not state a claim because the allegations do not bear on the contract. Whether Defendant RAC's employee made an accusation that Plaintiff "retained insurance proceeds[,]" ¶ 8, or "withheld GEICO funds[,]" ¶ 12, is immaterial because Plaintiff states "the underlying auto-insurance dispute was settled on terms unrelated to the vehicle's valuation or the GAP claim." Compl. 5. That scenario triggers the contract provision beginning "[i]f there is no Primary Insurance Carrier . . . ." GAP Addendum 4. Plaintiff does not contest that there is no primary insurance carrier payout. Whether Defendant RAC's employees made a comment about the insurance proceeds has no bearing on "effectuat[ing] the objectively reasonable expectations of the parties." *Klamath*, 237 Or. App. at 445.

B.     Credit Allegations

Plaintiff's allegations regarding credit in the context of her claim for breach of the implied covenant of good faith and fair dealing again raise a preemption question. The Court previously discussed the propriety of addressing preemption *sua sponte* when it found Plaintiff's Oregon UTPA claims preempted by 15 U.S.C. § 1681t(b)(1)(F). *See* Discussion, *supra*, III.B. The Court had no trouble finding Plaintiff's UTPA claims about credit reporting to be preempted because § 1681t(b)(1)(F) clearly contemplates preempting state statutory law. *Id.* In contrast,

Plaintiff's credit allegations in the context of good faith and fair dealing—a claim sounding in contract—raise a contested question of whether § 1681t(b)(1)(F) preempts state common law contract claims.[8] The Ninth Circuit has not spoken on this question.[9]

District courts in the Ninth Circuit are split whether § 1681t(b)(1)(F) preempts claims arising from contract. For the position that contract claims are not preempted, many courts look to *Rex v. Chase Home Fin. LLC*, 905 F.Supp.2d 1111 (C.D. Cal. 2012). In *Rex*, the plaintiffs brought, among other claims, a breach of contract claim that alleged the defendants "breached the agreement . . . by . . . reporting of this unlawfully claimed 'debt' to credit reporting agencies." *Id.* at 1152. The *Rex* court found that "a breach of contract claim is not preempted by the Section 1681t(b)(1)(F) Preemption Provision because that provision prohibits only legal duties imposed under the laws of any State, whereas requirements voluntarily assumed by contract are not imposed under state law." *Id.* (citation modified). Subsequent district courts in this circuit rely on *Rex. See, e.g.*, *Desser v. United States*, No. CV 13-09190 DDP (CWX), 2014 WL 4258344, at *6 (C.D. Cal. Aug. 27, 2014) ("Under [*Rex*'s] reasoning, which this court finds persuasive, the claims asserted by [the plaintiffs] that sound in contract—breach of contract, implied covenant of good faith, and promissory estoppel—are not preempted under Section 1681t(b)(1)(F) . . . ."); *Hogan v. Cent. Loan Admin.*, No. 2:22-cv-00039 WBS AC, 2022 WL 1228787, at *4 (E.D. Cal. Apr. 26, 2022) (citing *Rex* and finding the plaintiffs' "breach of

---

[8] 15 U.S.C. § 1681t(b)(1)(F) is the FCRA preemption provision at issue here. Other cases addressing FCRA preemption also discuss § 1681h(e), which addresses the FCRA's preemption of state law claims for defamation, invasion of privacy, and negligence. Because those causes of action are not alleged here, the Court focuses solely on § 1681t(b)(1)(F).

[9] In *Gorman*, the Ninth Circuit considered, among other things, the interplay between § 1681t(b)(1)(F) and § 1681h(e) with respect to a state law libel claim. 584 F.3d at 1165–67. *Gorman* is unhelpful for two reasons. First, it deals with a claim contemplated by § 1681h(e), which is not relevant here. *See supra* n. 8. Second, the Ninth Circuit ultimately did not reach the issue. *Id.* at 1167.

26 – OPINION & ORDER

contract claim is not preempted by the FCRA"); *Rahi v. Specialized Loan Serv., LLC*, No. 21-cv-02717-LB, 2022 WL 1409232, at *10 (N.D. Cal. May 4, 2022) ("Even though the plaintiffs' breach-of-implied-covenant claim is based on activity covered by § 1681s-2, it survives because the implied covenant claim is based on contractual duties and not duties imposed by state law.").

Other district courts in the Ninth Circuit adopt a "total preemption" position and find § 1681t(b)(1)(F) preempts contract claims. *See, e.g.*, *Mamboleo v. Wells Fargo Bank NA*, No. CV–14–00648–PHX–DJH, 2015 WL 9691022, at *5 (D. Ariz. Feb. 25, 2015) (adopting "total preemption" and "preempt[ing] all of [the plaintiff's] remaining state law claims causes of action" including contract claims), *aff'd on other grounds*, 688 F. App'x 418 (9th Cir. 2017); *Dorros v. JP Morgan Chase Bank, N.A.*, No. CV 10–08319 DMG (PJWx), 2011 WL 13217681, at *5–6, *5 n.4 (C.D. Cal. July 22, 2011) (dismissing, among other claims, breach of contract and breach of the implied covenant of good faith and fair dealing claims under the "total preemption" approach); *Jacobs v. Bank of Am., N.A.*, No. CV 16–61–M–DWM–JCL, 2017 WL 9292228, at *5 (D. Mont. Apr. 19, 2017) (finding "breach of contract claim is preempted to the extent it seeks damages based on [the defendants'] alleged credit reporting activities") (citing *Roybal v. Bank of Am., N.A*, No. CV 14–280–M–DLC, 2015 WL 1534118, at *3 (D. Mont. Apr. 6, 2015)).

The Sixth Circuit has also adopted the total preemption position with respect to contract claims. *Scott v. First S. Nat'l Bank*, 936 F.3d 509 (6th Cir. 2019).[10] In *Scott*, the plaintiffs

---

[10] Often cited alongside *Scott* are two Second Circuit cases and one Seventh Circuit case affirming FCRA preemption of state common law claims. *See Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 106–07 (2d Cir. 2009); *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47–48 (2d Cir. 2011); *Purcell v. Bank of Am.*, 659 F.3d 622, 625–26 (7th Cir. 2011). However, these three cases did not adjudicate preemption with respect to contract claims in particular. *Premium* found the plaintiff's state common law claims for misappropriation of trade secrets, unfair competition, and unjust enrichment were properly dismissed as preempted but "decline[d] to reach [the plaintiff's] preemption argument as to" the plaintiff's contract claims and instead affirmed dismissal on other grounds. 583 F.3d at 107. *MacPherson* dealt with

27 – OPINION & ORDER

brought, among others, claims for breach of the duty of good faith and fair dealing and tortious interference with contractual relationships. *Id.* at 516. The Sixth Circuit panel concluded that "[b]ecause the [duty of good faith and fair dealing and tortious interference with contractual relationship claims] concern the same 'subject matter regulated under . . . section 1681s-2 of [the FCRA]' *see* § 1681t(b)(1)(F), they are preempted by the FCRA." *Id.* at 520.

Both sides cite the same Supreme Court case—*Cipollone v. Liggett Group, Inc.,* 505 U.S. 504 (1992)—despite their contradictory views. *Compare Rex*, 905 F. Supp. 2d. at 1152 (relying on *Cipollone* for proposition that contractual duty is not "imposed" under state law), *with Scott*, 936 F.3d at 521–22 (relying on *Cipollone* for proposition that statutory versus common law distinction is without a difference). *Cipollone* dealt with a preemption statute similar to § 1681t(b)(1)(F) but for cigarette labeling laws: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." 505 U.S. at 515. *Cipollone* considered whether this statute preempted the petitioner's state common law claims for failure to warn, breach of express warranty, and fraudulent misrepresentation. 505 U.S. at 524–531. As *Scott* noted, the Supreme Court rejected the distinction between positive enactments and common law: "The phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules." *Id.* at 521. The Court also rejected the idea that "imposed under State law" did not include common law claims. *Id.* at 522.

---

defamation and intentional infliction of emotional distress claims. 665 F.3d at 46. *Purcell* did not specify beyond "common-law claims . . . ." 659 F.3d at 623.

28 – OPINION & ORDER

However, despite these broad statements, the Supreme Court indicated contract claims are different. In its analysis of the petitioner's breach of express warranty claim, the Supreme Court stated: "a common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement . . . *imposed under State law*' within the meaning of [the preemption statute]." *Id.* at 526. Justice Stevens footnoted: "common understanding dictates that a contractual requirement, although only enforceable under state law, is not 'imposed' by the State, but rather is 'imposed' by the contracting party upon itself." *Id.* at 526 n.24. Indeed, it was this footnote that *Rex* cited. *Rex*, 905 F. Supp. 2d at 1152.

This Court agrees with the district courts in this circuit holding claims sounding in contract are not preempted by § 1681t(b)(1)(F). The Court notes that none of the courts adopting total preemption have engaged with *Cipollone*'s contract-specific analysis. Applying *Cipollone*'s contract-specific comments, this Court finds Plaintiff's claims for breach of the implied covenant of good faith and fair dealing is not preempted by § 1681t(b)(1)(F).

Preemption analysis complete, the Court turns back to Plaintiff's allegations—that Defendant inaccurately reported Plaintiff's account as delinquent, Compl. 21 ¶ 9, and that only "[a]fter Plaintiff filed an arbitration demand in September 2025" did Defendant RAC "belatedly update the tradeline to add a 'consumer disputes this account' notation . . . ." Compl. 22 ¶ 13. At this stage of litigation, Plaintiff has sufficiently alleged that Defendant RAC violated her contractual expectations when it reported Plaintiff as delinquent on her loan and took multiple months to note the tradeline as disputed. *See Klamath*, 237 Or. App. at 445 (holding that the covenant "serves to effectuate the objectively reasonable expectations of the parties"). Because this claim is only properly alleged against Defendant RAC, the Court dismisses these allegations against Defendant IAWC.

29 – OPINION & ORDER

*** 

In sum, the Court dismisses Plaintiff's breach of the implied covenant of good faith and fair dealing claim with respect to the non-credit allegations, with leave to amend. The Court does not dismiss Plaintiff's breach of the implied covenant of good faith and fair dealing claim with respect to the credit allegations against Defendant RAC.

## VIII.  Damages

Defendants also move to dismiss Plaintiff's requests for emotional distress damages in her causes of action under the UTPA or contract (Claims Two through Seven). IAWC Mot. 16–17; RAC Mot. 19–20. The Court agrees that Plaintiff has not alleged facts permitting recovery of emotional distress damages for Claims Two through Seven.

Damages for emotional distress are unavailable for UTPA claims. *Mendoza v. Lithia Motors, Inc.*, No. 6:16-cv-01264-AA, 2017 WL 125018, at *3 (D. Or. 2017) (citing *Pearson*, 358 Or. 117) ("Noneconomic damages which are not objectively verifiable, such as physical pain or emotional distress, do not constitute ascertainable losses under the UTPA."). For breach of contract and its cousin breach of the covenant of good faith and fair dealing, emotional distress damages are unavailable except in cases involving physical injury. *Keltner v. Washington Cnty.*, 310 Or. 499, 504, 800 P.2d 752 (1990) (no emotional distress damages for breach of contract without physical injury); *Koa v. Allstate Indem. Co.*, No. 1:22-cv-00658-CL, 2023 WL 3066268, at *2 (D. Or. Mar. 23, 2023) (breach of the covenant of good faith and fair dealing "sounds in contract law and therefore, emotional and punitive damages are unavailable"). Plaintiff has not alleged physical injury.

//

//

30 – OPINION & ORDER

The Court notes for clarity that "[t]he FCRA permits 'recovery for emotional distress and humiliation.'" *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1109 (9th Cir. 2012) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)).

**CONCLUSION**

The Court GRANTS Defendant IAWC's Motion to Dismiss [22]. The Court GRANTS IN PART and DENIES IN PART Defendant RAC's Motion for Judgment on the Pleadings [29]. Plaintiff's FCRA claim is not dismissed. Plaintiff's ORS 646A.779 claim is dismissed with leave to amend. Plaintiff's ORS 646.608 claims are dismissed with leave to amend, with the exception of Plaintiff's ORS 646.608(1)(k) claim, which is dismissed without leave to amend. Plaintiff's breach of contract claim is dismissed with leave to amend. Plaintiff's unjust enrichment claim is dismissed without leave to amend. Plaintiff's breach of the implied covenant of good faith and fair dealing claim is dismissed with leave to amend with respect to the non-credit allegations; the claim is not dismissed with respect to the credit allegations against Defendant RAC.

Plaintiff may file an amended complaint curing the deficiencies identified herein within thirty (30) days of this Opinion & Order. Plaintiff is reminded that, should she choose to file an Amended Complaint, the complaint and its exhibits must stand alone and not reference her previous complaint. Plaintiff is further directed, should she choose to file an Amended Complaint, that the paragraph numbering of the Complaint shall be continuous throughout the document pursuant to Federal Rule of Civil Procedure 10(b).

IT IS SO ORDERED.

DATED this 11th day of June, 2026.

AMY M. BAGGIO
United States District Judge

31 – OPINION & ORDER